## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

**MICHAEL BURKS**                                                                    **PLAINTIFF**

**v.**                          **CASE NO. 5:10CV00358 BSM**

**STEVE CARTER,** *et al.*                                                          **DEFENDANTS**

### ORDER

Defendant Diane Baldwin's motion for summary judgment [Doc. No. 105] is granted and Baldwin is dismissed with prejudice. Defendant Obomo Asemota's oral motion for summary judgment is denied.

### I. BACKGROUND

Plaintiff Michael Burks filed suit under 42 U.S.C. Section 1983 against McGehee, Arkansas police officers Steve Carter and Ben Hines, McGehee-Desha County Hospital nurse Diane Baldwin and Dr. Obomo Asemota. He alleges that defendants forcefully pumped his stomach against his will in an attempt to recover drugs that he did not ingest. Summary judgment has already been granted on all of Burks's claims except his individual capacity claims against the officers for excessive force, cruel and unusual punishment, and illegal search and seizure, and his claims against Baldwin and Asemota for violations of his Fourth Amendment rights. [Doc. Nos. 84, 86]. The parties appeared for trial on July 9, 2012, and during the pretrial conference, Baldwin and Asemota orally moved for summary judgment, stating that they are entitled to qualified immunity. Baldwin then filed her motion in writing on March 5, 2013. [Doc. No. 105].

The following facts are undisputed.  On January 2, 2009, officers Carter and Hines pulled over Burks's vehicle.  Burks stepped out of the car and was patted down for weapons.  While patting him down, the officers thought they saw Burks remove something from his pocket and swallow it, and they assumed he was swallowing drugs.  When Carter asked Burks what he swallowed, Burks told him that he had not swallowed anything.

Burks was then arrested and taken to the McGehee-Desha County Hospital's emergency room.  Upon arrival, Asemota ordered a pulse lavage because the officers told him that they suspected Burks of ingesting drugs.  The officers did not have a warrant authorizing the procedure and were aware that, without Burks's consent, a warrant was required.  Burks was cleared of ingesting drugs, released from the hospital, and transported to the McGehee City Jail.

The following facts are disputed.  The officers state that they transported Burks to the hospital for his safety, but Burks denies this.  He alleges that the officers transported him to the hospital merely to search his stomach for evidence.  Burks claims that Carter lied by telling the hospital staff that he had a warrant to pump Burks's stomach.  Burks also claims that the officers entered his hospital room and held him down while the medical personnel pumped his stomach.  The officers deny that they entered his room and deny holding him down.

Asemota states he ordered a pulse lavage but that it was never performed; however, Burks alleges his stomach was indeed pumped without his consent and that the officers held him down while Asemota and a nurse placed a tube in his right nostril and poured a liquid

2

into the tube, which caused him to vomit into a bag.  He states that Asemota then used a pen to stir the contents of the bag and informed Carter that Burks had ingested crack cocaine. Burks claims that he requested that the bag be sent off for testing to confirm its contents, but that Asemota threw the bag in the trash.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if, after viewing the evidence in the light most favorable to Burks, no genuine issues of material fact exist and defendants are entitled to judgment as a matter of law.  *Nelson v. Corr. Med. Servs.,* 533 F.3d 958, 961 (8th Cir. 2008).  Burks cannot survive the motions for summary judgment merely by pointing to disputed facts; the facts in dispute must be material to the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1985).  If the facts alleged by Burks, when viewed in the light most favorable to his case, would not allow a reasonable jury to find in his favor, then summary judgment should be granted in favor of defendants.  *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

## III. DISCUSSION

Asemota's oral motion for summary judgment is denied.  Baldwin's motion for summary judgment is granted.

A.    Dr. Asemota

Asemota contends he cannot be liable for violating Burks's Fourth Amendment rights under 42 U.S.C. Section 1983 because he was not acting under color of state law. Alternatively, he moves for summary judgment, claiming qualified immunity.

### 1. Under Color of Law

Summary judgment is denied because there is a genuine issue of material fact in dispute as to whether Asemota acted under color of state law. Asemota contends that he did not act under color of state law because his actions were taken for purely medical purposes because he believed Burks had ingested narcotics. There is evidence in the record, however, suggesting that Asemota pumped Burks's stomach against his will in an effort to help the police execute a warrantless search.

A defendant must act under color of state law to be held liable for constitutional violations under 42 U.S.C. Section 1983. *See Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922 (1982). Generally, county-owned hospitals like McGehee-Desha County Hospital and their employees are considered state actors. *See, e.g., Beedle v. Wilson*, 422 F.3d 1059, 1070 (10th Cir.2005). Doctors, however, are usually considered private actors because they are independent contractors. *Lewellen v. Schneck Medical Center*, 2007 WL 2363384 *7 (S.D. Ind. Aug. 16, 2007). Because the record is unclear, it is presumed that Dr. Asemota is an independent contractor.

As a private actor, Asemota can still be deemed to have acted under color of state law if he exercised a power traditionally reserved to the state or acted in concert with state actors such that his actions can be fairly attributed to the state. *See, e.g., United States v. Price*, 383 U.S. 787, 794 (1966). For example, he can act under color of state law if he performs a search pursuant to a search warrant. *See Rodriques v. Furtado*, 950 F.2d 805 (1st Cir. 1991) (private physician acted under color of state law when he searched a suspect's vaginal cavity,

without her consent, at the request of police officers who presented him with a search warrant). The court in *Rodrigues* held that when a doctor performs a search pursuant to a search warrant, his actions can be attributed to the state. *Id.* at 814. This is true because the scope of, and motivation for, the search are established solely by the state's investigatory goals and the doctor's role in the search is purely that of "an auxiliary to normal police search procedures." *Id.*

Here, there is no question that the officers did not have a search warrant; however, there is conflicting evidence regarding whether Asemota pumped Burks's stomach at the request of the police. Consequently, whether Asemota acted under color of state law hinges on a question of fact that must be decided by the jury.

### 2. Qualified Immunity

Although Asemota may have acted under color of state law, he is not necessarily entitled, as a matter of law, to qualified immunity. *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) ("Private individuals [ ] are not necessarily shielded from liability under § 1983 by the immunity afforded public officials."). In determining whether a private individual receives qualified immunity, the policy considerations supporting the doctrine of qualified immunity must be examined. *Id.*

The First Circuit has held that public policy is well served by extending qualified immunity to a doctor who was pressed into service by police when he performed procedures which the police could not reasonably or safely perform. *Rodriques*, 950 F.2d at 815. The court reasoned that denying qualified immunity in such circumstances could cause physicians

to be reluctant to perform medically involved searches and that such reluctance could, in turn, "signal a loss to society of a valuable crime detection procedure or result in [such] procedures having to be carried out by nonprofessionals." *Id.*  Other courts have also recognized the need to extend qualified immunity to a private actor who, in the public interest, "performs a unique government function at the request of a state official who enjoys qualified immunity." *Warner v. Grand County*, 57 F.3d 962, 965 (10th Cir. 1995).

There is a dispute as to whether Asemota acted pursuant to orders of the police or whether he acted on his own, purely for medical purposes.  Although this is the case, it is clear that the police asked Asemota to pump Burks's stomach, which can be a potentially valuable crime detection procedure.  It is also a procedure that the police cannot reasonably, hygienically, or safely perform.  Furthermore, Asemota is alleged to have performed the procedure for the sole purpose of executing a search at the request of the police, and as such, he should be entitled to "no less protection tha[n] the police would [have] if they could reasonably perform the search." *Rodriques*, 950 F.2d at 815.  Therefore, as an initial matter, it is found that Dr. Asemota is legally entitled to assert qualified immunity.

The next issue is whether Asemota's assertion of qualified immunity entitles him to summary judgment under the specific facts and circumstances of this case.  *See Rodriques*, 950 F.2d at 815 (recognizing that when a private actor asserts qualified immunity, the issue is whether he is entitled to qualified immunity "both as a matter of law and under the specific facts of the case").  An actor with qualified immunity is entitled to summary judgment unless there is a genuine issue of material fact as to whether (1) the alleged conduct violated a

constitutional right; and (2) the right violated was clearly established "so that a reasonable official would understand that what he is doing violates that right." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006) (quotations and citation omitted). "If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999).

The first prong requires a determination of whether Asemota violated Burks's Fourth Amendment right to be free from searches and seizures that are objectively unreasonable. *See U.S. v. Dow*, 2010 WL 2679942 *5 (D. Minn., June 11, 2010). This standard of reasonableness is assessed by balancing "the need to search against the invasion which the search entails." *Id.* (internal quotation marks and citations omitted). "Courts must consider whether officials were justified in requiring the [suspect] to submit to the [procedure] and whether the means and procedures employed [. . .] respected relevant Fourth Amendment standards of reasonableness." *Id.* (internal quotation marks and citation omitted). "A compelled surgical intrusion into an individual's body for evidence, however, implicates expectations of privacy and security of such magnitude that the intrusion may be 'unreasonable' even if likely to produce evidence of a crime." *Winston v. Lee*, 470 U.S. 753, 759 (1985).

Here, a genuine issue of fact exists as to whether Asemota's alleged pumping of Burks's stomach was objectively unreasonable. First, Burks alleges that Asemota pumped his stomach despite Burks's repeated denials that he had ingested drugs and despite his refusal on three or four occasions to consent to the procedure. [Doc. No. 63-1] (Burks

Deposition), pgs. 42, 61.   Second, it is undisputed that the police officers did not have a search warrant and there is little evidence suggesting Asemota attempted to verify whether the officers did in fact have a warrant.   *Id.* at pg. 39; Burks SUF ¶ 8.   Finally, there are few if any facts indicating that Burks's behavior or medical condition at the hospital suggested he had ingested a toxic level of drugs.   *See Harrington v. Waterloo Police Dept.*, 2006 WL 3825053 *6-7  (N.D. Ia., Dec. 26, 2006) (finding stomach pump unreasonable under the Fourth Amendment where plaintiff refused to consent and the record was "void of any evidence demonstrating that exigent medical circumstances required [the] [plaintiff's] stomach to be pumped").   Viewing these facts in a light most favorable to Burks, a genuine dispute exists as to whether Asemota violated Burks's Fourth Amendment rights.

The second prong of qualified immunity asks whether the law was clearly established at the time of the alleged events such that a reasonable doctor in Asemota's position would have realized that pumping Burks's stomach was unlawful.   The Supreme Court held, in a case decided over fifty years ago, that it was unconstitutional for police to order a suspect's stomach pumped for the purpose of obtaining evidence.   *Rochin v. California*, 342 U.S. 165 (1952).   In *Rochin*, the suspect had swallowed two capsules during an arrest and was taken to a hospital where his stomach was pumped against his will at the direction of the arresting officers.   *Id.*   The Court found that this "forcible extraction of [the suspect's] stomach contents [. . .] to obtain evidence" was unconstitutional.   *Id.* at 172.

More recently, in a case decided after *Rodriques*, the First Circuit refused to grant qualified immunity to a prison doctor who performed exploratory abdominal surgery on an

8

inmate who was suspected by prison guards to have ingested contraband. *Sanchez v. Pereira-Castillo*, 590 F.3d 31 (1st Cir. 2009). The court reasoned that the case was distinguishable from *Rodriques* because one, unlike the police officers in *Rodriques*, the prison guards did not have a warrant, and because two, "a surgical invasion is far more intrusive than the already severe encroachment on a prisoner's bodily privacy occasioned by a manual body cavity search." *Id.* at 55. The court held:

> [P]hysicians asked to perform invasive body searches should not comply uncritically with the requests of prison officials and thereby become complicit in depriving prisoners of their constitutional rights.
>
> [. . .]
>
> [A] reasonable doctor should have understood that the surgery at issue here, performed at the insistence of the correctional authorities and not for plaintiff's benefit, violated plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures.

*Id.*

Like the doctor in *Sanchez*, Asemota is alleged to have performed a surgical search on Burks, against his will, at the request of police officers who did not have a search warrant. The record, when viewed in the light most favorable to Burks, shows that Burks told the medical personnel he had no drugs in his system and refused the procedure three or four times. [Doc. No. 63-1], pgs. 42, 61. The police officers purported to have a warrant and held Burks down while liquid was poured through his nose, which caused him to vomit into a bag. *Id.* at 37-41, 53. Given the highly intrusive nature of the search, the absence of a warrant, Burks's insistence that he did not swallow drugs, and the absence of signs that Burks's

medical condition or behavior indicated he had ingested a toxic level of drugs, there are genuine issues of material fact in dispute as to whether a reasonable doctor in Asemota's position would have realized that pumping Burks's stomach was unlawful.

B.      Qualified Immunity of Nurse Diane Baldwin

Burks does not dispute that his Fourth Amendment claim against Baldwin in her official capacity should be dismissed due to the previous dismissal of that claim against her employer, former defendant McGehee-Desha County Hospital. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (a suit against an individual in her official capacity "is functionally equivalent to a suit against the employing governmental entity"). As to the claim against Baldwin in her individual capacity, Burks argues that she is liable under Section 1983 for failing to take appropriate action in the operating room to prevent Asemota, the other nurse, and the police officers from pumping Burks's stomach.

"Bystander liability" has typically been confined to cases where a police officer witnesses other officers use excessive force on a suspect and takes no preventive action. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (collecting cases).   There is at least one case though, *Durham v. Nu'Man* 97 F.3d 862 (6th Cir. 1996), where the theory was applied to a nurse.   In *Durham,* a mental hospital nurse ordered a hospital security officer to place a patient under her care in isolation as punishment for the patient refusing to clean his urine off the floor. *Id.* at 864-65.   The patient, who was in shackles, resisted the security officer and was beaten by that officer and a second security officer for a period of ten minutes. *Id.* at 865.   The Sixth Circuit held that the nurse was not entitled to summary judgment on the

issue of qualified immunity, finding that a reasonable nurse would have realized it was unlawful to sit by idly while security officers beat a patient under her care for ten minutes. *Id.* at 868. The court emphasized that it was the nurse's orders to the security officer which instigated the conflict and that ten minutes "was long enough for [her] to have been able to make a difference, either by directing the hospital security officers to stop their attack, or by calling security from the main building of the hospital." *Id.*

Here, Baldwin's conduct can be clearly distinguished from that of the nurse in *Durham*. The nurse in *Durham* witnessed a blatantly unlawful, ten-minute beating of a patient who was under her primary care and took no action to help the patient or otherwise stop the beating. The only allegation against Baldwin is that she stood in the back of an operating room while a doctor and another nurse performed a medical procedure on a patient at the behest of police officers who claimed to have a warrant. The record is unclear what other knowledge Baldwin had and the record does not support Burks's position that a reasonable nurse in Baldwin's position would know that her actions were unlawful. Therefore, without deciding whether Baldwin's alleged "failure to act" actually violated the Constitution, she is granted summary judgment pursuant to the second prong of the qualified immunity test.

## IV. CONCLUSION

For the reasons discussed above, Asemota's motion for summary judgment is denied and Baldwin's motion for summary judgment is granted.

IT IS SO ORDERED this 5th day of March 2013.

11

_____
UNITED STATES DISTRICT JUDGE